```
                  UNITED STATES DISTRICT COURT
                   SOUTHERN DISTRICT OF TEXAS
                    CORPUS CHRISTI DIVISION


UNITED STATES OF AMERICA,    )   CASE NO:  2:15-CR-00214-1
                             )
           Plaintiff,        )      CRIMINAL
                             )
    vs.                      )     Corpus Christi, Texas
                             )
AUSTIN CARLIN,               )    Tuesday, August 25, 2015
                             )
           Defendant.        )    (1:32 p.m. to 1:47 p.m.)


                         MOTION HEARING

         BEFORE THE HONORABLE NELVA GONZALES RAMOS,
                UNITED STATES DISTRICT JUDGE


APPEARANCES:              See page 2

Court Recorder:           Genay Rogan

Clerk:                    Brandy Cortez

Court Security Officer:   Adolph Castillo

Deputy U.S. Marshal:      Steven Carnevale

Transcribed by:           Exceptional Reporting Services, Inc.
                          P.O. Box 18668
                          Corpus Christi, TX 78480-8668
                          361 949-2988
```

**THIS TRANSCRIPT HAS BEEN FURNISHED AT PUBLIC EXPENSE UNDER THE CRIMINAL JUSTICE ACT AND MAY BE USED ONLY AS AUTHORIZED BY COURT ORDER. UNAUTHORIZED REPRODUCTION WILL RESULT IN AN ASSESSMENT AGAINST COUNSEL FOR THE COST OF AN ORIGINAL AND ONE COPY AT THE OFFICIAL RATE. General Order 94-15, United States District Court, Southern District of Texas.**

Proceedings recorded by electronic sound recording; transcript produced by transcription service.

**APPEARANCES:**

For Plaintiff:           HUGO MARTINEZ, ESQ.
                         BRITTNEY JENSEN, ESQ.
                         Assistant United States Attorney
                         800 N. Shoreline, Suite 500
                         Corpus Christi, Texas 78401

For Defendant:           KRISTEN D. LANGFORD, ESQ.
                         Assistant Federal Public Defender
                         606 N. Carancahua, Suite 401
                         Corpus Christi, Texas 78401

**Corpus Christi, Texas; Tuesday, August 25, 2015; 1:32 p.m.**

**(Call to Order)**

**THE COURT:** The court calls Cause Number 2:15-cr-214, United States of America versus Austin Carlin.

**MR. MARTINEZ:** Hugo Martinez for the United States. Good afternoon, Your Honor.

**THE COURT:** Good afternoon.

**MS. JENSEN:** Brittney Jensen for the United States.

**MR. MARTINEZ:** Your Honor, may I approach?

**THE COURT:** Yes.

**MR. MARTINEZ:** I just wanted to bring it to the Court's attention that the victim's mother is present. I spoke to her yesterday and I explained to her this wasn't going to be a plea or a --

**THE COURT:** Uh-huh.

**MR. MARTINEZ:** -- a suppression hearing, but she wanted to be present anyway.

**THE COURT:** That's fine.

**MR. MARTINEZ:** I'm just letting the Court know.

**THE COURT:** Okay.

**MR. MARTINEZ:** Her name's Heather Mollis (phonetic) and she's here with her sister-in-law, Lisa Donahue (phonetic).

**THE COURT:** All right.

**MR. MARTINEZ:** All right.

**THE COURT:** Thank you.

```
 1          All right, counsel.  We are proceeding.  The defense
 2   had filed a motion to dismiss the indictment.  Ms. Langford, if
 3   you're ready to proceed on that?
 4          MS. LANGFORD:  Yes, Your Honor.
 5          Your Honor, as Your Honor knows, the Congress has
 6   substantial power under the Commerce Clause to regulate certain
 7   activity and to create certain laws.  And, I think, you know,
 8   we all are in agreement that they can regulate the channels in
 9   interstate commerce, the instrumentalities, and those
10   activities that have a substan -- I'm sorry --
11          THE COURT:  No, go ahead.
12          MS. LANGFORD:  -- those activities that have a
13   substantial effect on interstate commerce.  And I think that
14   this would probably be a relatively -- or an easier decision
15   for Your Honor if we were guided or bound under the Supreme
16   Court decisions of Lopez and Morrison.
17          As Your Honor knows, in U.S. v. Lopez, Congress
18   enacted a Gun-Free School Zone Act that was deemed
19   unconstitutional because it exceeded -- it was -- it did not
20   have a substantial effect on interstate commerce.  Morrison
21   kind of went under that same vein.  It was a Violence Against
22   Women Act that Congress attempted to -- or did pass and it was
23   deemed unconstitutional because, again, that Act did not have a
24   substantial effect on interstate commerce to under base crime,
25   they said did not substantially effect commerce.  And I think
```

1  if we were under that prong, this would be an easier analysis.
2          But as Your Honor can see through the cases that the
3  prosecution has cited in opposition -- some other District
4  Courts who have decided that this Act is constitutional -- that
5  we don't analyze this under the substantial effect on
6  interstate commerce prong because Congress was very smart or
7  cunning, whichever way you want to look at it, in enacting this
8  law.  They knew, and this is why Lopez and Morrison I think are
9  important, they knew the impact of Lopez and Morrison and the
10 problems that existed there and so they created -- they -- when
11 they enacted the 2006 Adam Walsh Act, which gives us this
12 kidnapping statute, they specifically wrote into it an offender
13 use portion that forces us into the second prong of this
14 Commerce Clause analysis, which would be the instrumentalities
15 of commerce.  And the Supreme Court has over and over again
16 stated that the instrumentalities in interstate commerce, even
17 if they are wholly intrastate, can be regulated by Congress.
18 So that would maybe make this an easier decision on Your Honor.
19         However, because they have so carefully worded that
20 statute, they have officially -- they've essentially made it
21 impossible for this crime to not be a federal crime.  In fact,
22 I can only think, you know, maybe if it -- if you had two plots
23 of land beside each other, not separated by a road, and
24 probably not with like agriculture growing on it that has been
25 subsidized by the federal government, maybe possibly then you

could have an intrastate -- solely intrastate kidnapping happen. But because they have so carefully worded the statute, they have made any kidnapping anywhere a federal crime. And that statute, because of that, should not stand up to constitutional muster. It basically eeks out any existence of federalism or the principles beyond -- behind the Commerce Clause. And so, you know, it -- it, again, it just gives federal jurisdiction to practically all intrastate criminal activity. So now are we going to make, you know, a murder that took place in an alley or a burglary where someone is casing the neighborhood and driving on the roads, or someone that's going to shoplift at Wal-Mart and they use the bus, now are all these crimes now federally regulated?

If we hold that this statute is constitutional, then that's basically what we're doing. We're letting Congress have full plenary -- plenary police authority over intrastate criminal activity. And we believe, Your Honor, that it is overbroad and unconstitutional on its face and unconstitutional as applied to the facts of this case, considering that my client did not cross state lines.

**THE COURT:** Is that all from the defense?

**MS. LANGFORD:** Yes, Your Honor.

**THE COURT:** Okay. Who's going to argue from the Government?

**MR. MARTINEZ:** Your Honor, Ms. Jensen's going to

7

1   argue for the United States.  I will add that I feel as if
2   Defense Counsel has made the argument for the Government in
3   that it is clear and well established that Congress can
4   regulate the instrumentalities.  And as she has fully pointed
5   out, the Supreme Court, over and over, has upheld that.  And
6   what we have here is an admit to the Federal Kidnapping Act
7   where Congress said that if we used instrumentality of
8   interstate or foreign commerce, that you are going to in fact
9   be regulated by the federal government.  And we have exactly
10  that happening here because we have the use of a cell phone,
11  the use of a motor vehicle and the use of a highway during the
12  course -- during the commission of the offense, which are all
13  -- have been well established as instrumentalities.
14          But -- I just feel like Defense Counsel has just
15  pointed out what I feel is the obvious, which is, Congress has
16  been able to do this, Congress has been allowed to do this.
17  The Supreme Court says that Congress can do this, and we have
18  just that instrumentality.  But nonetheless, Ms. Jensen will be
19  doing the argument for the government.
20          **THE COURT:**  All right.
21          **MS. JENSEN:**  I think that actually, Your Honor, the
22  Court has now heard the argument twice, notwithstanding the
23  fact that I did in preparation of this hearing today print out
24  some case law for both the Court and the defense, some cases
25  that were cited.  Also I highlighted that case law in the areas

EXCEPTIONAL REPORTING SERVICES, INC

that were mentioned or specifically important to the Government's argument. At this particular juncture, I don't want to repeat things that the Court has already heard.

However, I think it's really important to point out that the legislative histories involving -- revolving around this Act in 2006 makes it very, very clear that the nature of the world is changing, and has changed -- and it had changed since the last time that the federal kidnapping statute had been looked at. And one of the things that was really changing is the advent of technology. And I noticed yesterday in preparation for this hearing, Your Honor, that I did not -- I failed to mention the fact that a cell phone was used as an instrumentality during the commission of this offense in my written response to the motion filed by the Defendant. So I want to make sure that I mention that here and now.

There was a previous hearing that I was unable to present for, but Mr. Martinez was present for, and he handled on behalf of the Government, where we were dealing with issues regarding the indictment. And, as the court is aware and especially from that hearing, under 18 U.S. Code, Section 1201(a)(1), which is the charge in the indictment for this offense, the one part of that (a)(1) requires that the offender travel in interstate or foreign commerce or uses the mail or any means, facility, or instrumentality of interstate commerce or foreign commerce in committing or in furtherance of the

9

1 commission of the offense.  Well, just above that, what it does
2 talk about also is there is a benefit, a benefit to the
3 kidnapping.  I think that goes as far back as the original
4 enactment of the <u>Federal Kidnapping Act</u> with the Lindbergh
5 kidnapping where we were dealing with ransom.  But in this
6 particular case the Government's going to have to prove that
7 there was a benefit to the Defendant, Mr. Carlin.  And the
8 Government is prepared to prove beyond a reasonable doubt that
9 the benefit to Mr. Carlin was his sexual gratification or the
10 intent that he had to sexually molest the minor child victim in
11 this case.
12          The Government will be proving at trial, and has the
13 witnesses and evidence to prove at trial, that during the time
14 that the Defendant had the minor child in the vehicle, he took
15 pictures of the minor child's genital area while she was
16 sleeping, which means that now, in addition to a motor vehicle,
17 which is obviously an instrumentality of interstate commerce
18 and a highway, which is a channel of interstate commerce, we
19 have also a cell phone.  So that was something that I neglected
20 to put in the original response to the Defendant's motion in
21 this case.
22          I think that the defense's argument is one of policy
23 really more so than law because the law is on the side of the
24 Government's position in this case, which, of course, the
25 Government's position is we're going to ask the Court to deny

1 the motion to dismiss the indictment.

2 　　　　The policy discussion is an interesting one, however, the law clearly supports the constitutionality of this statute. And I would say that Ms. Langford is absolutely correct that, of course, this would be easier if there was a Fifth Circuit case or a Supreme Court case on point, but in the past the Supreme Court and plenty of other Circuits have dealt with cases that had similar jurisdictional elements, such as the murder for hire statute.

　　　　There was also an Eleventh Circuit Court case that's very interesting, the United States v. Ballinger which dealt with an arsonist who had committed arsons in several different states and those arsons were not continuing crimes as he went over those borders. They were each individually committed in the states where the houses and churches were burned. However, the Eleventh Circuit decided that because he used a highway, which is a channel of interstate commerce, that that put it directly in the wheel house of Congress when it has under commerce power to -- the ability to regulate the instrumentalities of commerce.

　　　　So while the policy discussion is interesting, I believe that the legal discussion is most important here. And there is nothing in the law that would support a finding that this statute is unconstitutional. So for those reasons, we would ask the Court to please deny the Defendant's motion to

1  dismiss the indictment.

2  **THE COURT:** Anything further from the defense?

3  **MS. LANGFORD:** Your Honor, just to sum up that, you know, federal jurisdiction over non-commercial, violent, criminal conduct, not directed at the channels or instrumentalities of commerce should only arise when it is necessary and proper to protect interstate commerce. The Government is not able to show that here under Title 18, 1201(a)(1).

We feel that this statute is unconstitutional on its face and again, unconstitutional as applied to the facts of my client's case. We ask you to dismiss.

**THE COURT:** The Court's going to deny the motion to dismiss the indictment finding that the statute at issue here falls within Congress' power to regulate under the Commerce Clause and finds that it's a constitutional exercise of Congress' power to regulate the instrumentalities as argued here of interstate commerce.

Anything further from the defense?

**MS. LANGFORD:** That's it, Your Honor.

**THE COURT:** The Government?

**MR. MARTINEZ:** Nothing further, Your Honor.

**THE COURT:** Okay. So we -- there's an evaluation scheduled, motion to -- we reset a hearing to sometime in September, Brandy?

12

1    **THE CLERK:** September 11th, Your Honor, on the motion
2  to suppress.
3    **THE COURT:** Okay. And then I guess trial will set
4  after that, correct?
5    **MS. LANGFORD:** Yes, Your Honor.
6    **MR. MARTINEZ:** Your Honor, just for purpose of the
7  record, it's my understanding that the evaluation that's being
8  conducted is not for purposes of whether or not the Defendant
9  is competent to stand trial, but it's mostly for the purposes
10 of determining whether or not he understood and knowingly
11 waived his Miranda rights and --
12   **THE COURT:** And I think that's right. And I tried to
13 clarify that yesterday because I thought if it was regarding a
14 competency issue, then we probably should not have been going
15 forward today. But it's my understanding that it's not based
16 on competency.
17   **MS. LANGFORD:** Correct, Your Honor. I'm in agreement
18 with that.
19   **THE COURT:** You can be excused.
20   **MS. LANGFORD:** Thank you, Your Honor.
21   **(This proceeding was adjourned at 1:47 p.m.)**

## CERTIFICATION

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

_____          November 2, 2016
          Signed                                Dated

*TONI HUDSON, TRANSCRIBER*